# Baker, Appellant, *v.* Pennsylvania Railroad Company.

*Railroads—Eminent domain—Condemnation proceedings—Damages—Smoke, noise and dust.*

1. Where land has been actually appropriated by a railroad company under the right of eminent domain, smoke, noise, dust and dirt resulting from the operation of trains, over the land taken and affecting the land not taken, may be considered as elements of damage tending to depreciate the value of the remaining portion of the tract not appropriated.

2. The owner is entitled to show the close proximity of coal wharves and water tanks to his property, and the use made of them so far as that use multiplied trains upon the land actually taken, and increased the noise, dirt and dust, resulting from the ordinary operation of the railroad thereon; and he may also show that the land was appropriated for the purpose of affording an approach to the coal wharves and as a part of that construction, and this is the case, although only part of the construction considered as a whole was actually located upon the land taken.    Such injuries must be direct and positive and not indirect and consequential.

3. Damages resulting from the operation of trains over land of an owner, formerly appropriated cannot be considered in a later proceeding to appropriate other land.

4. In a land condemnation case witnesses may estimate the value of the land in dollars and cents before and after the taking.

5. Depreciation in value of an entire tract may be shown although a turnpike road cuts off the land taken from the main portion of the tract, if it appears that the title to the land was held as an entirety and had always been cultivated as one single tract.

Argued April 29, 1912.  Appeal, No. 26, Jan. T., 1912, by plaintiff, from judgment of C. P. Chester Co., Aug. T., 1910, No. 80, on verdict for plaintiff in case of H. Preston Baker v. Pennsylvania Railroad Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.  Reversed.

480 BAKER, Appellant, *v.* PENNA. R. R. CO.

Appeal from award of Jury of view. Before HEMP-HILL, P. J.

At the trial H. Preston Baker, J. C. Valentine, Ambrose C. Fulton, Richard W. Schrack, William H. Seltzer, W. Logan Rogers and Issacher Price all testified to values in dollars and cents. On motion their testimony was stricken out. (8-15).

Plaintiff presented the following points:

If the jury believe from the evidence that the construction and location of the coal wharves and the water tanks with reference to plaintiff's property multiply trains on the plaintiff's property, and result in a more frequent use of the roadbed thereon, and increase the noise, dirt, and dust, in the ordinary operation of the railroad, they may consider that the coal wharves and water tanks form part of the construction and operation of the defendant's road through plaintiff's land, and their effect upon the market value of the plaintiff's property.

Answer.—That point is refused. I have virtually already so charged.

2. If the jury find from the evidence that the plaintiff's land was taken by the defendant company for the construction of the defendant's coal wharves and water tanks and is used in the ordinary operation of the defendant's coal wharves and water tanks, then the jury may consider the effect of the construction and ordinary operation of said coal wharves and water tanks upon the market value of the whole of plaintiff's property.

Answer.—That is also refused.

3. Under the evidence in this case and the law applicable thereto, no damages can be awarded the plaintiff by reason of the construction or operation of the coal wharves and chutes of the defendant, or on account of any noise, smoke or dirt going therefrom, or from engines of the defendant at said wharves and not on the property taken.

Answer.—I have already in effect so charged you and that point affirmed.

4. No witness offered by the plaintiff has testified to any amount of damages which have resulted, in their judgment, to the lands of the plaintiff north of the turnpike, exclusively from the taking of the land which is the subject of this action.   All the said witnesses have included in their damages stated, injuries, which they think resulted from the operation of the coal wharves and chutes of the defendant, or from the operation of engines or trains of the defendant upon lands other than the land taken, and the testimony of said witnesses upon the question of damages to the land of the plaintiff north of the railroad should be disregarded by the jury.

Answer.—That point is also affirmed.

The court charged in part as follows:—

"It is only that which arises from the taking of this piece of land that you are entitled to consider in this action.   If by the erection of these chutes or any other structure, or by the manner in which the original road, which was there at the time, was operated, such injury, if any, was not caused by the exercise of the right of eminent domain at the date of the taking of this piece of land, and the remedy, if he have suffered any wrong therefrom must recover in a different form of action entirely."

"Not whether the chutes or whether the tracks lying south have injured the property, because they were not acquired by the railroad company by reason of this exercise of the right of eminent domain."

"The plaintiff has endeavored to satisfy you, not in dollars and cents, because, as you may see, it is difficult to determine from where the dirt and smoke and noise comes in a connecting line like this, and with a coal chute where trains stop within a hundred and fifty feet of this eastern end of this piece, and some candidly said, I think—although you will not take my recollec-

tion, but be guided by your own—that they thought the greater portion of the dirt, smoke and annoyance, noise, and so forth, came from down about the coal chutes. That you will not consider. It is only the injury that he has sustained by reason of the taking and using of this piece of land which was acquired under this unusual proceeding, the right of eminent domain."

Verdict and judgment for plaintiff for $2,762.52. Plaintiff appealed.

*Errors assigned* were (1-7) above instructions, quoting them; (8-15) in striking out testimony as above.

*Isabel Darlington* and *Thomas S. Butler,* for appellant.—Smoke, noise, dust and dirt from the operation of trains are clearly elements of damage to be considered in condemnation proceedings against a railroad where land has been actually taken from the plaintiff: Comstock v. Ry. Co., 169 Pa. 582; Shano v. Bridge Co., 189 Pa. 245; Hewitt v. R. R. Co., 19 Pa. Super. Ct. 304; Hamilton v. R. R. Co., 190 Pa. 51; Rudolph v. R. R. Co., 186 Pa. 541.

Where land has been actually taken by a railroad company and a construction placed partly thereon and partly on land adjoining, the owner of the land taken is entitled to recover as damages for the taking, the whole depreciation in the market value of his property caused by the construction of the railroad company, and the railroad company can not evade responsibility for the full damages suffered by the owner of the land taken, on the ground that it did not place its whole construction, which injured the land, upon the land taken: Leard v. R. R. Co., 229 Pa. 475; Comstock v. Ry. Co., 169 Pa. 582.

*A. M. Holding,* for appellee.—If no part of appellant's land had been taken, it is clearly well settled that he could have recovered no damages whatever from either

the operation of the coal chutes, locomotives or trains thereat, or locomotives or trains upon the lands as to which he had released: Penna. R. R. Co. v. Marchant, 119 Pa. 541; Dooner v. Penna. R. R. Co., 142 Pa. 36; Ryan v. Penna. R. R. Co., 132 Pa. 304.

A railroad company is not responsible for indirect injuries resulting from the operation of a road upon its own land in a lawful manner, without negligence, unskillfulness or malice:—Wunderlich v. Penna. R. R. Co., 223 Pa. 114; Walker v. Ry. Co., 103 Mass. 10; Sutton v. Penna. R. R., 214 Pa. 274; Mahaffey v. R. R. Co., 163 Pa. 158; Jones v. R. R. Co., 151 Pa. 30.

The appellant is not entitled to any damages for depreciation of his farm north of the turnpike, because the land taken was wholly seperated from the farm, and must be considered as a separate property: Potts v. R. R. Co., 119 Pa. 278; Rudolph v. R. R. Co., 186 Pa. 541; Kosler v. Railway Co., 208 Pa. 50.

OPINION BY MR. JUSTICE ELKIN, May 13, 1912:

On account of refusing to admit offers of testimony relating to certain elements of damage, and in striking out all testimony admitted in which the witnesses fixed the amount of damages in dollars and cents, this judgment must be reversed and a new venire awarded. It will, therefore, only be necessary to indicate what elements of damages may be considered, and what may not, when the case is again tried. This is an action to recover compensation, commonly called damages, for land belonging to appellant and actually appropriated by the railroad company under the right of eminent domain. One of the controverted questions is whether in such a case smoke, noise, dust and dirt, resulting from the operation of trains, over the land taken, may be considered as elements of damage tending to depreciate the value of the remaining portion of the tract not appropriated. That such elements of damage may be

considered in estimating the depreciation in market
value has been squarely ruled by this court in those
cases in which there was an actual taking of the land
of the owner for a public use: Comstock v. Railway Co.,
169 Pa. 582; Rudolph v. Railroad Co., 186 Pa. 541;
Shano v. Bridge Co., 189 Pa. 245; Hamilton v. Railroad
Co., 190 Pa. 51; Shuster v. Printing Telegraph Co., 34
Pa. Super. Ct., 513. In the application of this rule
some confusion has arisen by attempting to apply the
same measure of damages to cases in which the rail-
road tracks were laid upon a public street, already
dedicated to a public use. In such cases an abutting
property owner is only injured to the extent of the
increased servitude, and must prove special injuries
different in kind and degree from those suffered by
the public generally. For this reason it has been held
that smoke, noise, dust and dirt, which must necessarily
affect all property holders abutting on the street, can-
not be considered as an injury special to any particular
owner so abutting. In this class of cases such elements
of damage may not be considered, but a different rule
applies where, as in the case at bar, there has been an
actual taking in the first instance.

The first assignment of error, if we properly under-
stand its import, must be sustained. The plaintiff was
entitled to show the close proximity of the coal wharves
and water tanks to his property, and the use made of
them, so far as that use multiplied trains upon the
land actually taken, and increased the noise, dirt and
dust, resulting from the ordinary operation of the rail-
road thereon. These were proper elements of dam-
age to be considered in estimating the depreciation in
market value of the remaining portion of the tract not
appropriated. This is what we understand the first
point to mean, and when so understood, it should have
been affirmed. Noise, smoke, dirt and dust, can only
be considered as elements of damage when they come

upon and directly injure the property of the owner whose land has been taken, but when such injuries depreciate the value of the remaining portion of the tract, it is competent for the complaining owner to prove them and for the jury to give them due consideration in arriving at a proper verdict. In the case at bar it is proper to show the increase of noise, smoke, dirt and dust upon the property of the plaintiff, resulting from the multiplication of trains on his land, occasioned by the location of the coal wharves and water tanks in close proximity thereto. In this connection it may be observed that it was entirely proper to show that the land of plaintiff was appropriated for the purpose of affording an approach to the coal wharves and as a part of that construction. If this be established in fact, then the coal wharves and the approaches thereto, could very properly be regarded as a single construction for a particular railroad use, and if so, all injuries directly resulting to the land of plaintiff from the entire construction may be considered, although only part of that construction was actually located upon the land taken: Comstock v. Railway Co., supra.; Leard v. Railroad Co., 229 Pa. 475; White v. Railroad Co., 229 Pa. 480. Such injuries must be direct and positive to the land of the owner from which the appropriation was made, and not indirect and consequential. Consequential injuries, such as the unsightly appearance of the coal wharves, or of smoke, noise, dust and dirt, which affect the neighborhood generally but which do not come upon or directly injure the land taken or injured, have no place in estimating damages caused by the depreciation in value of the tract affected by the appropriation. Direct injuries only can be considered, not consequential.

Then, again, it is proper to remark that damages resulting from the operation of trains over the land formerly appropriated cannot be considered in this pro-

ceeding, and all such elements of damage must be excluded. The owner has already been compensated for these damages, and must not be permitted to again recover for the same injuries. The rights of the parties in this respect should be carefully guarded when the case is again tried. The owner can show increased injuries to his farm resulting from the new use of the land condemned, but cannot claim damages for which he has already been compensated.

We also are of opinion that the learned trial judge erred in striking out the testimony of all witnesses who estimated the value of the land in dollars and cents before and after the taking. With that testimony stricken out there was no basis upon which the jury could estimate the damages, and it is difficult to see how any proper verdict could have been returned fixing the compensation to which the plaintiff was entitled for the property taken and injured. But, as the case is again to be tried, it will not be necessary to discuss more in detail the effect of striking out this testimony. We have indicated what elements of damage can be considered at the new trial, and what cannot be, and this is all that is deemed necessary for present purposes.

We cannot agree with the contention of the learned counsel for appellee, that the depreciation in value to the entire tract cannot be shown because the turnpike cuts off the land taken from the main portion of the tract. The title to the farm is held as an entirety, and it has always been cultivated as one single tract. The location of the turnpike as a convenience to the public, did not affect the right of the land owner to use and enjoy his farm as an entirety. The fact that the land taken was separated by the public road from the remaining portion of the tract, if the testimony warranted such an inference, might very properly be considered by the jury in estimating the extent of the injury to the land not taken, but this at best would only

tend  to  minimize  the  damages,  and  would  not  be  a
ground  for  refusing  to  consider  such  testimony  at  all.

Judgment  reversed  and  a  venire  facias    de    novo
awarded.